JULY TERM, 1883, No. 56.                    MAY 5, 1884.

## Union National Bank v. Dersham.

1. A depositor in a bank testified that, upon negotiations for the settlement of a dispute concerning a certificate of deposit for $200 between himself and the directors of the bank, one of the directors said that "they could take me for forgery, and could sue me and get the $200, and then I thought, sooner than to go to law, I would pay $75, and I gave them a due bill, and promised them to pay in thirty days. If I had money, I would have paid it then." He gave his note for $75, which was immediately indorsed over to an innocent holder for value, and paid the money a few days before the note was due. In an action against the bank to recover back the $75 so paid, *held*, that the question of duress ought not to have been submitted to the jury on such testimony.

2. Any contract produced by actual intimidation is voidable, not only where the circumstances were sufficient to intimidate a man of ordinary firmness, but were sufficient to and did intimidate the particular person because of his or her infirmity, though insufficient to intimidate one of ordinary firmness.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Union County.*

Appeal by The Union National Bank, defendant, from the judgment of R. F. Brown, Esq., for $84 34 in favor of Jacob Dersham, the plaintiff.

Upon the trial in the court below, before BUCHER, P. J., the following facts appeared:

On May 8, 1878, the Union National Bank of Lewisburg, Pennsylvania, closed its doors for investigation, the bank examiner taking charge on the 10th day of May.

A day or two after the bank closed, Jacob Dersham, the plaintiff, came to the bank with the obligations which he had against the bank and against its cashier, H. P. Sheller, personally, and showed them to Jonathan Wolfe, one of the directors. Among these papers was a certificate of deposit for $200, dated August 18, 1877, and signed by H. P. Sheller, but without the word "cashier." This obligation appeared upon the books of the bank. Mr. Wolfe made a memorandum of these obligations in the presence of the plaintiff, and put down the certificate as the individual obligation of Sheller without objection.

The plaintiff then called upon H. P. Sheller at his resi-

dence, who added the word "cashier" after his name on the certificate. John K. Kremer was afterwards appointed cashier of the bank, and this certificate was presented at the bank and paid by him. He afterwards discovered that the word "cashier" had been apparently written at a different time, and with different ink, and wrote to plaintiff to call at the bank. Upon his attention being called to the matter, plaintiff admitted that "cashier" had been written to the certificate afterwards. The directors of the bank claimed that an over-payment had been made to the plaintiff to the extent of these $200, and proposed to compromise with him, and finally agreed to accept $75 to settle the matter. The plaintiff testified, *inter alia :*

"Then the cashier said that they paid me too much. I told them, right away, that they did not, and then the directors were in the back room, and then there was a fellow there, I guess it was Smith. He said that I should go along out, and while there he tried to persuade me that if I would give one hundred dollars back, and I told him that I would not pay any back, that it was not right, for they got the money, and it was my money that they paid for that certificate. Well, so he said if I paid one hundred dollars back, but I did not agree to it. I thought it was a hard feed, and then he said they would go to law, and make me pay the two hundred dollars back. Well, I could not believe it. Well, then, he come down; then I promised him fifty dollars sooner than go to law. They threatened me to take me for forging; said that they could take me for that. Well, then, he did not know whether he should take fifty dollars. Then he went into the back room to the other fellows, and was there a while, and came out and said he would not take the fifty dollars, and came down to seventy-five dollars. He said they could take me for forgery, and could sue me, and get the two hundred dollars ; and then I thought, sooner than to go to law, I would pay seventy-five dollars, and I gave them a due bill, and promised them to pay thirty days. If I had money, I would have paid it then. Then I came down in thirty days, and I asked the cashier. I did not care for the due bill. And he wrote a note, and I saw my name on the back, and I thought I would have to pay it, and I did pay it."

Upon cross-examination he testified :

*Q.* "Now, then, Mr. Dersham, you say that Mr. Smith told you that they could bring a prosecution against you for forgery. Are you sure he said that ?

[Union National Bank *v.* Dersham.]

*A.* Yes, and Duncan too.

*Q.* That they would?

*A.* That they could.

*Q.* Did they say that they might be able to recover the two hundred dollars from you?

*A.* Yes, sir; that is what Smith said. I thought sooner than go to law I would sooner pay that. First I offered fifty dollars, but they would not take that, and I paid the seventy-five dollars rather than have any lawsuit about it. This is the first law-suit, and I hope it will be the last one."

The note given by the plaintiff was immediately indorsed over to an innocent holder for value, and discounted by the bank. Plaintiff paid the note five days before it was due, and was not aware of the manner in which it was indorsed until more than two years afterwards.

Defendant's counsel offered to show that this certificate was, at the time, recorded by Mr. Dersham as an obligation against Mr. Sheller, and not against the bank. Offered in connection with the testimony that has been given for the purpose of showing that there was a doubt as to whether this was the obligation of Mr. Sheller, or whether it was the obligation of the bank, and this, together with the circumstances that the plaintiff in this suit held individual obligations against the bank to show that it was by way of compromise that there was ground for claim, and it was by way of compromise that this note of $75 was given.

Objection by plaintiff sustained. Exception.

Defendant's counsel offered to show by Jonathan Wolf, the amounts and dates of the obligations of Mr. Dersham against Mr. Sheller individually, as well as those that were due by the bank were given by him as cashier of the bank, for the purpose of showing that there was a doubt whether this paper for $200 was a claim against Mr. Sheller individually or a claim against the bank. For the purpose of showing that the bank had the ground of claim against Mr. Dersham, and that the note for $75 was given in compromise thereof.

Objection by plaintiff sustained. Exception.

Defendant's counsel offered to ask W. C. Duncan whether Mr. Sheller, the former cashier of the bank, had made false entries in the books of the bank, admitted to by him as having been made, by which the bank was prejudiced, taken in connection with the knowledge of the fact that Mr. Sheller had afterwards changed this

paper. Offered for the purpose of showing that there was a reasonable doubt as to whether this obligation was the obligation of the bank or of Mr. Sheller individually, as a ground of compromise between these parties.

Objection by plaintiff sustained. Exception.

Defendant's counsel offered to prove further, by W. C. Duncan, that the bank examiner came to the bank after the comptroller of the treasury had been telegraphed to, and that he assumed the control of the bank. Offered for the purpose of showing that Mr. Sheller was not the cashier, that the examiner took the affairs of the bank out of the hands of all of them, including the cashier.

Objection by plaintiff sustained. Exception.

The Court charged the jury, *inter alia*, as follows :

" We submit this case under all the evidence in the cause, and under the instructions to the court to you to find such verdict as you think right and proper. If you find there was duress, then find for the plaintiff $75, with interest from the time of its payment."

March 18, 1882, verdict for the plaintiff for $92 22, upon which judgment was afterwards entered.

Defendant then took out a writ of error, assigning as error the refusal of defendant's offers, and the portion of the charge quoted above.

*Alfred Hayes* and *William Jones* for plaintiff in error.

The rejected testimony would show that there were good grounds for compromise, without the element of duress being involved in it. The payment was entirely voluntary on the part of Mr. Dersham, and there was nothing amounting to duress : Real Est. Saving Inst. *v.* Linder, 24 P. F. Sm., 371 ; Navigation Co. *v.* Brown, 4 Out., 338 ; Barrett *v.* French, 1 Conn., 354 ; Hatter *v.* Greenlee, 26 American Decisions, 370 ; U. S. *v.* Huckabee, 16 Wall., 421 ; Worcester *v.* Eaton, 13 Mass., 377 ; Bissett *v.* Bissett, 1 Har. & McH., 211.

The fact that the note had been negotiated does not affect the case, because it was not paid merely because it was negotiated. If there was duress, the note was ratified by its subsequent voluntary payment.

*Dill & Beale* for defendant in error.

The rejected testimony was inadmissible, because a compromise compelled by duress is as invalid as an extortion by duress without pretense of claim.

The private memorandum could not affect the plaintiff below, because he was no party to it. The fact that the

examiner took charge of the bank would not prove that Sheller did not remain cashier.

Fraudulent representation and duress are clearly shown by the evidence: Jordan v. Elliott, 12 W. N. C., 59; Miller v. Miller, 18 P. F. Sm., 486.

Threats of an illegal arrest or imprisonment render void an instrument procured through them: 32 N. J. Eq. R., 55; Carpenter v. Groff, 5 S. & R., 164; Preston v. Hill, 38 Cal., 686.

October 6, 1884, the opinion of the Court was delivered by TRUNKEY, J.:

Dersham's testimony reveals a dispute between the officers of the bank and himself, respecting a certificate of deposit. He knew all the facts at the time he gave the note in settlement, and he complains of no fraudulent representation. Before the note became due, and without knowledge that it had been indorsed to an innocent holder, he went from his home to the bank for the purpose of paying it, and did pay without objection. The fact of indorsement had nothing to do in moving him to make payment. He says that, pending the negotiations for settlement, the directors threatened him with prosecution for forgery, but, in giving the language of the alleged threat, it was that they "could prosecute," not "would." In the talk with Smith, he offered to pay $50 rather than go to law. Smith saw the others, and then proposed to take $75. Dersham states the conclusion thus: "He said they could take me for forgery, and could sue me, and get the $200; and then I thought sooner than go to law I would pay $75, and I gave them a due bill and promised them to pay in thirty days. If I had money, I would have paid it then." Such is the alleged duress as shown in the plaintiff's testimony. The testimony on the part of the defendant makes the case no stronger. There is no evidence that the plaintiff is timid or feeble, or not possessed of ordinary firmness by reason of age or other cause. He did not believe they could collect the money back, finally settled and gave the note to avoid a law-suit, and he does not assert that his judgment was overcome, or that he gave the note through fear arising from a threat of criminal prosecution. As bearing on the question of duress, his act of payment of the note is as potent as if no transfer had been made—he did not learn of the transfer till in the act of payment. He gave the note and paid it in settlement of a claim for a larger sum.

The whole testimony, or that on part of the plaintiff, did

[Rogers *v.* Davidson.]

not warrant a finding of "that degree of severity, either threatened and impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness." There was no threatened exercise of power from which he needed immediate relief—if sued, he could defend. It may be conceded that the rule has become settled that any contract produced by actual intimidation is voidable, not only where the circumstances were sufficient to intimidate a man of ordinary firmness, but were sufficient to and did intimidate the particular person, because of his or her infirmity, though insufficient to intimidate one of ordinary firmness. The question of duress ought not to be submitted on a scintilla of evidence. We are of opinion that the fifth assignment of error must be sustained.

It is unnecessary to note the other assignments. The Court charged in effect that a voluntary payment of money without fraud or constraint, though in ignorance of the law or the legal circumstances of the case, cannot be recovered back. There being no sufficient proof of fraud or coercion—no duress—the plaintiff was not entitled to recover.

Judgment reversed.